Thomas J. SINITO, Petitioner–Appellant,

v.

T.R. KINDT, Warden, Respondent–Appellee.

No. 91–1770.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1991.

Decided Jan. 22, 1992.

---

Thomas G. Longo (argued), Cleveland, Ohio, for petitioner-appellant.

Thomas E. Kieper, Asst. U.S. Atty. (argued), Indianapolis, Ind., for respondent-appellee.

Before WOOD, Jr., COFFEY and MANION, Circuit Judges.

PER CURIAM.

While serving a federal sentence, Thomas Sinito experienced a series of transfers to other federal prisons pursuant to writs of habeas corpus *ad prosequendum* for other alleged crimes. He ultimately received a longer federal sentence for a second federal conviction, to run concurrently with the one he was serving. In the habeas petition before us, Sinito claims he should have been given several years credit

against the second sentence for time served between the date of the first writ and the date of his second sentence. The district court denied the credit. We affirm.

I.

On October 16, 1981, Sinito was convicted of conspiring to conduct a racketeering activity, engaging in a racketeering activity, making extortionate extensions of credit, making collections of extensions of credit by extortionate means, attempting to evade income tax, and filing false and fraudulent income tax returns. The United States District Court for the Northern District of Ohio sentenced him to eighteen years imprisonment and a $20,000 fine. Sinito began serving his sentence at the Federal Correctional Institution in Ashland, Kentucky on November 19, 1981.

On July 27, 1982, Sinito was removed from the Ashland Prison pursuant to a writ of habeas corpus *ad prosequendum*[1] issued by the United States District Court for the Northern District of Ohio pending disposition of additional federal charges. Prior to the trial for which the writ had issued, Sinito was transferred to the Federal Correctional Institute in Milan, Michigan. On March 8, 1984, he was removed from Milan pursuant to a state writ of habeas corpus *ad prosequendum* and he received a one year sentence for aggravated assault from an Ohio state court. Sinito was returned to Milan on November 13, 1984. On July 2, 1986, Sinito was again removed from Milan. This time Sinito pleaded guilty to charges of engaging in a continuing criminal enterprise and possessing with intent to distribute cocaine. He was sentenced by the United States District Court for the Northern District of Ohio to a term of imprisonment of twenty-two years and a concurrent term of imprisonment of five years with a special parole term of three years. This sentence was to run concurrently with the federal sentence Sinito had been serving.[2] On July 17, 1986, Sinito

---

1. This writ issues "when it is necessary to remove a prisoner in order to *prosecute* in the proper jurisdiction wherein the [alleged crime] was committed." BLACK'S LAW DICTIONARY 638 (5th ed. 1979); *see also* 28 U.S.C. § 2241(c)(5) (1988).

2. Since the second sentence, although to be served concurrently with the first added several

received a sentence of seven to twenty-five years for manslaughter from an Ohio state court. Sinito was returned to Milan on July 25, 1986. He was then moved to a higher security federal prison in Terre Haute, Indiana.

## II.

█ In support of his petition, Sinito argues under 28 U.S.C. § 2241(c)(3) (1988) that he is being held in custody in violation of a federal statute, specifically 18 U.S.C. § 3568 (1985),[3] which provides in part:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for *any days spent in custody in connection with the offense or acts for which sentence was imposed.*

*Id.* (emphasis added). Sinito argues that § 3568 requires the Federal Bureau of Prisons to give him credit against his second federal sentence for the time he spent in custody pending his second federal trial. Sinito maintains that he is entitled to subtract from the subsequent 22–year sentence the time from the date the writ of habeas corpus *ad prosequendum* was issued, July 27, 1982, through the date of his second federal sentencing, July 11, 1986.

Neither the statutory language nor the case law interpreting § 3568[4] support Sinito's argument. Section 3568 provides that

a federal prisoner will receive credit towards his sentence for time spent in custody "in connection with the offense or acts for which sentence was imposed." During the period after the writ of habeas corpus *ad prosequendum* had been issued, Sinito was not held in custody in connection with the federal offenses for which the second sentence was imposed. Instead, he was serving his sentence for his 1981 federal conviction. The issuance of the writ of habeas corpus *ad prosequendum* did not alter his custody status. It merely changed the location of his custody for the sentence he was already serving. *Cf. Flick v. Blevins,* 887 F.2d 778, 781 (7th Cir.1989), *cert. denied,* 495 U.S. 934, 110 S.Ct. 2179, 109 L.Ed.2d 508 (1990) ("Where the writ expressly requires the return of the prisoner to the 'sending' state, the sending state retains full jurisdiction over the prisoner since the prisoner is only 'on loan' to the prosecuting jurisdiction.").

Although the statute is clear, Sinito nevertheless resorts to legislative history to argue that § 3568 mandates that he receive credit for the time he spent in custody awaiting his second federal trial. Sinito focuses on the 1960 and 1966 amendments to § 3568 in support of his argument. In 1960, Congress added the following language to § 3568:

> *Provided,* That the Attorney General *shall* give any such person credit toward service of his sentence for any days spent in custody prior to the imposition of sentence by the sentencing court for want of bail set for the offense under which sentence was imposed where the

culation of federal sentences imposed for crimes committed prior to November 1, 1987. *Jackson v. Brennan,* 924 F.2d 725, 727 n. 3 (7th Cir.1991).

**4.** Sinito also argues that the district court improperly relied on a Bureau of Federal Prisons Program Statement as controlling precedent. The district court noted that the Attorney General determines whether credit will be given for time spent in jail prior to the imposition of a sentence. The court then explained the method in which the Bureau calculates jail time credit by setting forth the pertinent part of its program statement. However, the district court relied on case law and the language of § 3568 to reach its conclusion.

---

years of incarceration, Sinito obviously hopes to subtract some of those years with this claimed credit. Although the sentencing transcript is not in the record, we note that the sentencing judge may have taken into consideration the fact that Sinito had already served approximately five years towards his first federal sentence when he determined the length of Sinito's second concurrent federal sentence. We assume the sentencing judge was well aware of the total number of years Sinito would serve when he set the term of the second sentence.

**3.** Effective November 1, 1987, § 3568 has been repealed. Pub.L. No. 98–473, Title II, c. II, §§ 212(a)(2) & 235(a)(1), 98 Stat.1987, 2031 (1984). However, § 3568 still governs the cal-

statute requires the imposition of a minimum mandatory sentence.

Pub.L. No. 86–691, 74 Stat. 738 (emphasis added). In 1966, the statute was amended and the "for want of bail ..." clause was removed. Pub.L. No. 89–465, 80 Stat. 214. Sinito maintains that the deletion of that language with the 1966 amendment reveals Congress' intent that all time spent in pretrial custody, regardless of the reason, be credited to the prison term.[5]

Of course, that is absurd. Sinito was incarcerated because of his existing federal sentence, not because of an anticipated conviction and sentence. The statute insures that those accused and even those convicted of a crime will be given credit for the time they are held before being sentenced for that crime. The legislative history does nothing to imply that someone already serving time for an existing sentence will get double credit while waiting for a second sentence. The statute insures full credit for time in custody for a pretrial detainee or a convicted criminal awaiting sentencing, either of whom would otherwise be free were it not for the pending charge or recent conviction.

■ The case law is contrary to Sinito's position as well. Although it appears that no reported decisions have addressed the treatment of pretrial federal custody under § 3568, a substantial number of cases have addressed the similar treatment of pretrial detainees in state custody under § 3568. These cases have held that a prisoner in state custody who is subject to a writ of habeas corpus *ad prosequendum* based on a federal charge is not entitled to pretrial credit against his subsequent federal sen-

tence because the time spent in pretrial custody was credited toward his existing state sentence. Permitting credit towards the federal sentence would result in double credit. *McIntyre v. United States*, 508 F.2d 403, 404 (8th Cir.), *cert. denied*, 422 U.S. 1010, 95 S.Ct. 2634, 45 L.Ed.2d 673 (1975); *Vignera v. Attorney General of United States*, 455 F.2d 637, 638 (5th Cir. 1972); *Siegel v. United States*, 436 F.2d at 95. The reasoning in these cases is equally applicable to cases involving dual federal sentences.[6]

## III.

While the writ of habeas corpus *ad prosequendum* was pending, Sinito was in custody in connection with his first federal conviction and he received credit towards his first federal sentence. Thus, he is not entitled to receive credit for that time towards his second federal sentence. The district court's denial of Sinito's petition for habeas corpus is therefore

AFFIRMED.

---

5. The legislative history of the 1960 amendment states that "[t]he primary purpose of the bill is to eliminate the disparity in sentences under certain statutes requiring mandatory terms of imprisonment." H.R.Rep. No. 2058, 86th Cong., 2nd Sess., pt. 2, at 3288, 3289 (1960). The legislative history of the 1966 amendment states that "persons convicted of crimes will receive credit for time spent in custody prior to trial against service of *any sentence* imposed by the court." H.R.Rep. No. 1541, 89th Cong., 2nd Sess., pt. 2, at 2293, 2295 (1966) (emphasis added). Accordingly, the language was deleted from the 1966 amendments "to extend the provision to all federal crimes rather than only to

those requiring minimum mandatory sentences." *Siegel v. United States*, 436 F.2d 92, 95 (2d Cir.1970).

6. Sinito argues that these cases are distinguishable from his case because they concern issues of state-federal comity. Issues of comity relate to the competing interests of state and federal governments in prosecuting offenses and the necessity of transferring a prisoner from one jurisdiction to another to accommodate both interests. *See Siegel*, 436 F.2d at 95. The interest of comity has no bearing on the computation of jail-time credit pursuant to § 3568.